[S. F. No. 4502. In Bank.—March 31, 1906.]

## T. M. DUNGAN, Petitioner, v. SUPERIOR COURT OF FRESNO COUNTY, Respondent.

ESTATES OF DECEASED PERSONS—DEATH OF NON-RESIDENT—PROPERTY IN SEVERAL COUNTIES—JURISDICTION—PRIOR APPLICATION.—There cannot be two valid administrations at the same time in this state. Where the deceased was a non-resident of the state and left property in several counties of this state, the superior court of a county in which part of the estate is situated, in which application for letters is first made, has exclusive jurisdiction to settle all the estate situated in this state.

ID.—FILING OF PETITION FOR LETTERS, AN "APPLICATION."—The first filing of a petition for letters constitutes the first "application" therefor, within the meaning of section 1295 of the Code of Civil Procedure.

ID.—PROHIBITION—PRIOR GRANT OF LETTERS TO SUBSEQUENT APPLICANT.
—Where letters of administration were subsequently applied for
and granted in another county in which part of the estate is situ-
ated, the public administrator of the county in which letters were
first applied for by him, and the next of kin of the deceased,
have a sufficient beneficial interest to entitle them to a writ of
prohibition to prevent further proceedings under the subsequent
application, notwithstanding the prior grant of letters to the subse-
quent applicant.

ID.—SITUATION OF ESTATE IN COUNTY OF FIRST APPLICATION—JURISDIC-
TIONAL FACT—EXCLUSIVE POWER OF COURT.—The superior court of
the county in which letters were first applied for under a petition
alleging the situation of estate of the decedent in that county,
has exclusive power to determine that jurisdictional fact, subject
only to review upon appeal, and its existence cannot be inquired
into collaterally by the respondent to a petition for prohibition
against proceedings under a subsequent application in another
county.

ID.—APPLICATION FOR REVOCATION OF SUBSEQUENT LETTERS—REMEDY BY
APPEAL NOT ADEQUATE.—Regardless of the question whether the
petitioner for the writ of prohibition could maintain an application
for the revocation of the letters issued upon a subsequent applica-
tion in another county, an appeal by him from an order refusing
to vacate the letters cannot stay proceedings in that court, and is
not such a plain, speedy, and adequate remedy in the ordinary course
of law as to bar prohibition against the exercise of jurisdiction
by that court.

PETITION for Writ of Prohibition to the Superior Court
of Fresno County.   George E. Church, Judge.

The facts are stated in the opinion of the court.

Carter P. Pomeroy, Hannah & Miller, H. T. Miller, and
Frank H. Short, for Petitioner.

Everts & Ewing, and Truman & Oliver, for Respondent.

ANGELLOTTI, J.—This is an application for a writ of
prohibition to restrain the superior court of Fresno County
from taking any further proceedings in the matter of the
settlement of the estate of Jane Davis, deceased.   The peti-
tioners are the public administrator of Tulare County and
Mary G. Stone, the niece and next of kin of said deceased.

It is claimed that the superior court of Fresno County is
without jurisdiction in the matter of said .estate, notwith-

standing which fact it is asserting jurisdiction, having enter-
tained an application for letters of administration therein,
made an order appointing R. D. Chittenden, public adminis-
trator of Fresno County, administrator of said estate, issued
letters of administration to him, and refused to vacate said
letters. There is no controversy as to the material facts.
Jane Davis died in the state of New York on September 19,
1904, being at the time of her death a resident of said state
of New York. She left estate in various counties of the
state of California. On the same day, but after her death,
petitioner Dungan, as public administrator of Tulare County,
filed with the clerk of the superior court of Tulare County
his written petition and application for letters of adminis-
tration of said estate, in the form and manner prescribed by
law, and said clerk thereupon, on the same day, set such
petition for hearing by the court and posted the required
notices. The petition contained the allegations essential to
the jurisdiction of said superior court, including allegations
to the effect that the decedent died out of the state, not
being a resident of the state, and that a portion of the estate
left by her was situate in the county of Tulare. The hearing
of said application was continued from time to time, until,
on December 24, 1904, after a hearing, an order was made
by said superior court, appointing Dungan administrator of
said estate, and letters of administration were thereupon
issued to him. An appeal has been taken from said order,
which is still pending undetermined. The alleged jurisdiction
of the Fresno County superior court is based upon proceed-
ings initiated therein by R. D. Chittenden, public adminis-
trator, who did not file his petition for letters of
administration until September 23, 1904. His petition alleged
that the deceased left estate in Fresno County. His applica-
tion was heard by the court on October 3, 1904, and an order
was thereupon made appointing him administrator, and let-
ters of administration issued accordingly.

It is conceded that jurisdiction of proceedings for the settle-
ment of the estate of a deceased person cannot coexist in two
superior courts of the state at the same time. "There cannot be
two valid administrations at the same time in this state." (*Es-
tate of Griffith*, 84 Cal. 107, 110, [23 Pac. 528, 24 Pac. 381].)
When any such court has acquired jurisdiction in such a mat-

ter, that jurisdiction is exclusive.    (See Woerner on American
Law of Administration, sec. 204.)    It is provided by our
statute that where the decedent died out of the state, not
being a resident of the state at the time of his death, such
proceedings may be had "in the county in which any part
of the estate may be."    (Code Civ. Proc., sec. 1294, subd. 3.)
Recognizing that such a decedent may leave estate in more
than one county, the legislature further provided as follows,
viz.: "When the estate of the decedent is in more than one
county, he having died out of the state, and not having been
a resident thereof at the time of his death, . . . the superior
court of that county in which application is first made for
letters testamentary or of administration, has exclusive juris-
diction of the settlement of the estate."    (Code Civ. Proc.,
sec. 1295.)    It thus appears that although, prior to the making
of any application for letters, two or more courts may have
concurrent jurisdiction to receive and entertain an applica-
tion, the county of exclusive jurisdiction for the settlement
of the estate is as definitely and precisely fixed by the legis-
lature as it is in the case of a resident of this state, where
the exclusive jurisdiction is declared to be the county of
which the deceased was a resident at the time of his death.
(Code Civ. Proc., sec. 1294, subd. 1.)    Here it is in that
county containing a portion of his estate "in which applica-
tion is first made."

The only point made as to the construction of this plain
and unambiguous statutory provision is as to the meaning
of the words "in which application is first made."    When is
such an application "made" within the meaning of this pro-
vision?    In view of our statutory provisions upon the subject
(Code Civ. Proc., secs. 1371-1379), we are satisfied that the
filing of a proper petition with the clerk of a superior court
constitutes the making of the application.    An application
must necessarily precede the hearing.    The statute fully pre-
scribes the manner and form for the making of such appli-
cation.    It cannot be oral, but "must be in writing, signed
by the applicant or his counsel, and filed with the clerk of
the court, stating the facts essential to give the court juris-
diction of the case."    (Sec. 1371.)    This plainly constituted
the making of the application, in the opinion of the framers
of the original code, in which both sections 1295 and 1371

were contained in their present form, for the headnote to section 1371 was "Applications, How Made." (See *Barnes* v. *Jones*, 51 Cal. 303, 306; *Sharon* v. *Sharon*, 75 Cal. 1, 16, [16 Pac. 345].) Thereupon the court to which the petition or application (which words are used synonymously in the statute) is presented must assume jurisdiction thereof, through its designated officer, the clerk of the court, by appointing a time "for the hearing of the application" which has been made, and giving the prescribed notice. (Secs. 1372, 1373.) At the time appointed for the "hearing of such application," or at any time to which such hearing is continued, the court must hear the allegations and proofs. (Secs. 1372, 1375.) Obviously, in the light of these statutory provisions, what takes place at the hearing is not the making of an application, but is the hearing of the application that has, at a previous date, been made in the manner prescribed by statute.

The question is simply one of construction of a statute. It is true that the constitution confers jurisdiction in "all matters of probate" upon the superior court, but this does not mean that all superior courts in the state shall have concurrent jurisdiction in every particular probate matter. The legislature undoubtedly has the right to prescribe by general laws the rules which shall obtain, in determining which of the many superior courts shall exercise the constitutionally conferred jurisdiction in any particular estate. It follows from the above that Tulare County is the county in which application was first made. for letters of administration, and that thereby, if any part of the estate of decedent was situate therein, the superior court of that county obtained exclusive jurisdiction of the settlement of said estate.

It is contended that as a matter of fact no part of the estate of decedent was situate in Tulare County. Such contention is not available to respondent here. The petition filed in that county alleged the existence of estate therein, and the question as to the truth of that allegation was one which the Tulare court had exclusive jurisdiction to determine, subject only to review on appeal. While the existence of estate in such county was essential to jurisdiction, it was one of those jurisdictional facts which the Tulare court had to determine from evidence produced before it, and its decision

upon that point would be entitled to the same presumption of verity as its decision upon any other point, and could not be collaterally attacked. (*In re Eichhoff's Estate,* 101 Cal. 600, [36 Pac. 11].) The case is analogous to those where residence of the deceased within the county is the essential to jurisdiction, and in such cases it is settled that where applications are made in different counties upon conflicting claims as to the fact of residence the superior court of the county in which a petition is first filed has exclusive jurisdiction to determine the question of residence, and that the courts of other counties must abide the determination of that court, which is reviewable only upon appeal. (See *Estate of Latour,* 140 Cal. 414, 425, [73 Pac. 1070, 74 Pac. 441]; *Estate of Damke,* 133 Cal. 430, [65 Pac. 889]; *Estate of Griffith,* 84 Cal. 107, 110, [23 Pac. 528, 24 Pac. 381].) In *Estate of Damke,* 133 Cal. 430, [65 Pac. 889], an order of the superior court of Sacramento County appointing an administrator, upon a petition filed two days after the filing of the petition in San Joaquin County, was reversed on the sole ground that the superior court of San Joaquin County had taken jurisdiction of the proceeding prior to the filing of the petition in Sacramento County. The effect of the decisions plainly is that jurisdiction in such matters attaches upon the filing of the first petition to the superior court in which the petition is filed, and continues during the pendency of the proceeding thus instituted, and that this jurisdiction is exclusive, precluding any other court from effectually acting in the matter; in other words, that during the pendency of such proceeding action by any other court is without and in excess of its power. In this connection, we cite the case of *Estate of Worthington,* 4 Ohio Dec. 381, where the principles applicable here are fully and learnedly discussed. It is therefore immaterial in this proceeding whether or not, as a matter of fact, there was property of the estate in Tulare County. It is enough that the proceeding instituted therein, upon a petition alleging the existence of such property therein, is still pending.

In the answer and oral argument it was contended that prohibition will not lie, for the reason that there is a plain, speedy, and adequate remedy by appeal. It appears that Dungan made an application for the revocation of the Fresno letters, and has in fact appealed from the order denying his

application. Regardless of the question as to whether Dungan could maintain such proceedings for revocation (see *Estate of Griffith*, 84 Cal. 107, 110, [23 Pac. 258, 24 Pac. 381]), an appeal by him from an order refusing to vacate the letters issued by the superior court of Fresno County does not stay the proceedings in that court nor debar the person to whom letters were granted therein from exercising the powers and performing the duties of administrator. In view of the complications which will necessarily follow the attempted exercise of jurisdiction in this matter by two superior courts, we are of the opinion that it cannot be said that there is a plain, speedy, and adequate remedy in the ordinary course of law. We have no doubt that petitioners have a sufficient beneficial interest to entitle them to maintain this proceeding (see *Estate of Damke*, 133 Cal. 434, [65 Pac. 888]), and are of the opinion that the superior court of Fresno County should be restrained from proceeding in the matter of said estate.

Let a writ of prohibition issue directing the superior court of Fresno County to desist and refrain from further proceedings in the matter of the settlement of the estate of Jane Davis, deceased, pending the final determination of the proceeding in the matter of said estate instituted in the superior court of Tulare County on September 19, 1904.

Beatty, C. J., Lorigan, J., Henshaw, J., and McFarland, J., concurred.